UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-CR-0112-CVE-1 |
| | ) | |
| EDWARD JOSEPH PARSON, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Before the Court are defendant Edward Joseph Parson's motion in limine to exclude certain testimony, or, in the alternative, motion for a Daubert hearing (Dkt. #30), and motion in limine to exclude a prior conviction under Fed. R. Evid. 609(a)(1)(B) (Dkt. # 29).

On March 24, 2021, a grand jury charged defendant with aggravated sexual abuse of a minor in Indian country. Dkt. # 4, at 1. The indictment alleges that beginning in or about January 1, 2018, and continuing through in or about March 2019, the defendant "did knowingly engage and attempt to engage in a sexual act and cause and attempt to cause a sexual act" on a female minor under the age of twelve. Id.

**I.  Motion in Limine to Exclude Certain Testimony, or, in the Alternative, Motion for a Daubert Hearing (Dkt. #30)**

Defendant moves for the Court to exclude, or, in the alternative, hold a Daubert hearing as to, certain testimony defendant anticipates the government will proffer. Dkt. # 30, at 1. Specifically, defendant asks the Court to 1) "bar[] any witness from giving an opinion regarding the import of a normal anogenital examination beyond a simple statement that a normal exam is not necessarily inconsistent with a history of sexual abuse," or, if the Court does not bar such testimony, hold a Daubert hearing; 2) "[b]ar any expert witness from testifying regarding any matter to the extent the

government has not complied with Fed. R. Civ. P. 16(a)(1)(G)"; 3) "[bar] any testimony from Dr. Baxter"; and 4) "[bar] interviewers from giving their opinions, interpretations, characterizations, or descriptions of [the minor named in the indictment]'s demeanor, tone, or response time in recorded interviews that will be played for the jury." Id. at 15. Plaintiff responds (Dkt. # 34) that 1) the testimony of plaintiff's expert, Lauren Conway, D.O., regarding the "import of a normal anogenital examination" is proper based on her training and experience, and the substance of Dr. Conway's testimony is "is not a novel scientific issue and does not necessitate a *Daubert* hearing"; 2) plaintiff has provided expert notice in compliance with Fed. R. Crim. P. 16; 3) plaintiff does not intend to call Michael Baxter, D.O., as an expert witness; and 4) plaintiff has "provided notice of its intent to call forensic interviewer Jessica (Scott) Stombaugh as both an expert and fact witness; therefore, her personal observations and professional interpretations are relevant and admissible." Dkt. # 34, at 1, 3.

As a preliminary matter, based on plaintiff's response (Dkt. # 34), defendant's third and part of his fourth request to the Court (bar any expert testimony to the extent plaintiff has not complied with the requirements of Rule 16, and bar Dr. Baxter from testifying as an expert, respectively) are moot.[1] Plaintiff states that it provided defendant with the requisite Rule 16 notice of the experts it intends to call, and that it does not intend to call Dr. Baxter as an expert witness. However, as plaintiff did not attach a copy of the Rule 16 notice to its response, the Court directs plaintiff to file the Rule 16 notice prior to the pretrial hearing.

---

[1] Plaintiff says it will not call Dr. Baxter as an expert, but does not address if it will call him as a fact witness. If plaintiff calls Dr. Baxter as a fact witness, defendant is free to raise a proper objection at that time.

Fed. R. Evid. 702, which governs the admissibility of expert witness testimony, provides, in pertinent part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts and data . . . .

Further, the Supreme Court has found that, pursuant to Rule 702, the Court performs a "gatekeeping role . . . of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993). The objective of this "gatekeeping requirement . . . is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practices of an expert in the relevant field." Kumho Tire Co., Ltd. V. Carmichael, 526 U.S. 137, 152 (1999). Tenth Circuit precedent is clear that a district court must exercise its gatekeeper function, but a party does not have any entitlement to any particular method in which the Court performs this function. United States v. Nacchio, 555 F.3d 1234, 1245 (10th Cir. 2009). While a Daubert hearing may be preferable in some cases, such a hearing is not required and a Court may satisfy its gatekeeper function in other ways. United States v. Blake, 284 Fed. App'x 530 (10th Cir. 2008).

      **A.**      **Defendant's Request to Exclude Testimony "regarding the import of a normal anogenital exam," or, in the Alternative, Request for a <u>Daubert</u> Hearing**

Defendant asks the Court to exclude certain testimony from Dr. Lauren Conway, Dkt. # 30, at 7, the expert witness plaintiff intends to call to testify. Dkt. # 34, at 6. In the alternative, should the Court not exclude a specific portion of Dr. Conway's testimony, defendant requests a <u>Daubert</u> hearing. Dkt. # 30, at 1. Dr. Conway examined S.S., the victim named in the indictment, on April 10, 2019. Dkt. # 30-7, at 1. In her examination, Dr. Conway concluded that S.S. "is without acute or chronic signs of trauma[;]" however, Dr. Conway added that "[a] normal exam does not confirm or refute the allegations. The majority of confirmed sexual abuse cases have normal anogenital exams due to [various reasons]." <u>Id.</u> at 2. Defendant concedes that the Tenth Circuit has previously found no issue with an expert witness testifying that "a normal examination is not necessarily inconsistent with a history of sexual abuse." <u>United States v. Charley</u>, 189 F.3d 1251, 1263 (10th Cir. 1999). However, defendant argues that Dr. Conway's next statement, that the "majority of confirmed sexual abuse cases have normal anogenital exams[,]" is an improper expert opinion because it is either impermissible vouching, or is a purported scientific fact for which plaintiff has not provided an adequate basis. Dkt. # 30, at 7. First, the Court finds that Dr. Conway's statement does not amount to impermissible vouching. In <u>Charley</u>, for example, one of the child abuse experts concluded that the alleged victims were sexually abused, despite normal examinations, based solely on what the victims told to her and others. 189 F.3d at 1265. The Tenth Circuit found that the expert "was merely vouching for the credibility of the child complainants." <u>Id.</u> at 1266. Here, by contrast, Dr. Conway does not conclude S.S. was in fact sexually abused; rather, Dr. Conway notes S.S.'s "disclosure of *possible* sexual abuse." Dkt. # 30-7, at 2 (emphasis added). Thus, Dr.

Conway's statement about "the majority of confirmed sexual abuse cases" does not vouch for S.S.'s credibility.

However, Rule 702 requires that an expert's testimony be based on "sufficient facts and data," and that it help the jury "understand the evidence or to determine a fact in issue." Rule 702(a), (b). Dr. Conway's statement about the "majority of confirmed sexual abuse cases" is so broad and non-specific, that it is essentially unverifiable and risks confusing or unduly influencing the jury. Therefore, while Dr. Conway may testify that a normal examination does not confirm or refute a finding that S.S. was sexually abused, which is in line with the Tenth Circuit's guidance in Charley, her testimony about the "majority of confirmed sexual abuse cases hav[ing] normal anogenital exams" is inadmissible. Therefore, defendant's request to exclude that particular part of Dr. Conway's testimony is granted.

> B. **Defendant's Request to Bar Forensic Interviewers from Giving Their Opinions, Interpretations, Characterizations, or Descriptions of S.S.'s Demeanor, Tone, or Response Time in Recorded Interviews**

Defendant also asks the Court to exclude witness testimony from Child Advocacy Center forensic interviewers Sarah Jabr and Jessica (Scott) Stombaugh, who interviewed S.S. following the sexual abuse allegations from October 2018 and March 2019. Dkt. # 30, at 18; Dkt. # 30-6, at 1; Dkt. # 30-4, at 1. Defendant argues that plaintiff has not provided notice of its intent to introduce either forensic interviewer as an expert; thus, the Court should exclude their expert testimony pursuant to Rule 16. Dkt. # 30, at 13. Defendant further argues that neither Ms. Stombaugh or Ms. Jabr should be allowed to "give descriptions, interpretations, or conclusions regarding S.S.'s demeanor, tone, and response time," during their forensic interviews with S.S. because such opinions, whether they are "expert opinions or lay witness opinions, [are] not helpful to the jury."

Id. at 14.  Finally, defendant argues that pursuant to Fed. R. Evid. 1002, the "best evidence rule," the forensic interviewers should be precluded from opining on the interviews, because the interview recordings will be played for the jurors at trial, and the "original is a more reliable, complete, and accurate source of information as to its contents and meaning than anyone's description."  Id. (quoting United States v. Chavez, 976 F.3d 1178, 1195 (10th Cir. 2020)).  Plaintiff responds that it has provided its Rule 16 notice to defendant and plans to call forensic interviewer Jessica Stombaugh "as both an expert and fact witness;" as such, "her personal observations and professional interpretations are relevant and admissible."  Dkt. # 34, at 1, 3.

      First, since plaintiff has provided defendant with the requisite Rule 16 notice that it intends to call Ms. Stombaugh as an expert witness, defendant's first argument is moot.  Ms. Jabr is not being called to testify, and plaintiff has given notice to defendant as to Ms. Stombaugh.  Next, the Court cannot pre-judge the admissibility of Ms. Stombaugh's testimony before trial.  The Court's ruling on the admissibility of Ms. Stombaugh's testimony will depend heavily on the context in which it is offered at trial, namely, the nature of her qualifications and training, the basis of her experience and knowledge, and the extent to which her testimony about the recording is helpful to the jury.  Thus, defendant may raise any improper opinion objections as to Ms. Stombaugh's testimony at trial.  Finally, defendant's interpretation of the best-evidence rule is misguided.  In Chavez, for example, the Tenth Circuit notes that the fundamental purpose of the best-evidence rule is ensuring the accuracy and authenticity of an original document.  976 F.3d at 1193-94.  As such, any party seeking to "prove the contents of an original writing, recording, or photograph" must admit the original in addition to any other evidence proving such content.  Id.  Here, Ms. Stombaugh's testimony is not being offered to prove the contents of the recorded interview with S.S..  Her

6

testimony is being offered as a fact witness to give her impressions of S.S.'s demeanor during the interview, and to offer her impressions and opinions as an expert experienced in conducting forensic interviews of child abuse victims. Such testimony is not probative of what was said during the interview; rather it would add nuance and specialized knowledge that could be helpful for a lay juror listening to the original recording. As such, the best-evidence rule is inapplicable here. Therefore, defendant's request to preclude Ms. Stombaugh from testifying as to her descriptions, interpretations, or conclusions regarding the interview with S.S. is denied.

## II.   Defendant's Motion in Limine to Exclude a Prior Conviction Under Fed. R. Evid. 609(a)(1)(B) (Dkt. # 29)

Defendant next asks the Court to prevent plaintiff from impeaching defendant with his prior Oklahoma state court conviction for child neglect should he choose to testify at trial. Dkt. # 29, at 1. Defendant asserts that "there is a high likelihood that [he] will testify in his own defense" and that, pursuant to Fed. R. Evid. 609(a)(1)(B), the prior conviction's probative value does not outweigh the danger of prejudice. Defendant argues that because the prior conviction is not more probative than prejudicial, the Court should exclude the prior conviction for impeachment purposes. Id. at 1, 4. Plaintiff urges the Court to deny defendant's motion, arguing that admitting the prior conviction goes to the credibility of the defendant. Dkt. # 31, at 1. Plaintiff requests, in the alternative, that the Court "take the matter under advisement until defendant has testified[,]" as plaintiff "will seek to introduce the prior conviction on cross-examination" if defendant testifies falsely or opens the door to the prior conviction. Id.

The Tenth Circuit "has long permitted the government to impeach the testimony of a criminal defendant who takes the witness stand in the same manner as any other witness, including reference

to prior convictions." United States v. Haslip, 160 F.3d 649, 654 (10th Cir. 1998). Under Fed. R.Evid. 609(a)(1)(B), evidence of a felony conviction may be used to impeach a criminal defendant if the probative value of the evidence outweighs its prejudicial effect. The scope of impeachment under Rule 609(a) is limited to "the essential facts of convictions, the nature of the crimes, and the punishment," and the defendant may not be cross-examined about the details of his prior convictions. United States v. Commanche, 577 F.3d 1261, 1271 (10th Cir. 2009). "The Tenth Circuit has identified five factors that should be considered before a criminal defendant is impeached with evidence of his prior convictions: (1) the impeachment value of the defendant's prior crimes; (2) the dates of the convictions and the defendant's subsequent history; (3) the similarity between the past crime and charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of defendant's credibility at trial." United States v. Smalls, 752 F.3d 1227, 1240 (10th Cir. 2014).

The Oklahoma State Courts Network does not make available any documents related to the prior state court conviction. However, plaintiff represents in its response (Dkt. # 31) that on January 24, 2014 "defendant pled guilty to felony child neglect in the Tulsa County District Court, in case number CF-2013-3545." Dkt. # 31, at 2. Plaintiff further represents that defendant was charged in the 2013 case after "two young children in his care wandered away from the home while he was asleep. The children were found near the street." Id.

"In evaluating the first factor, the impeachment value of the defendant's prior crimes, a prior conviction is more likely to be admissible where it involves a crime that bears on defendant's credibility." United States v. Ahaisse, No. 2020-CR-0106-CVE, 2021 WL 2290574, at *1, *2 (N. D. Okla. June 4, 2021). Plaintiff argues that "defendant's prior conviction has impeachment value, inasmuch as it bears on defendant's history with children in his care." Dkt. # 31, at 3. Plaintiff's

8

understanding of impeachment value is misguided here. At the pretrial stage, defendant's prior conviction would have impeachment value if the conviction were probative of defendant's veracity. See United States v. Verner, No. 15-CR-0039-CVE, 2015 WL 1528917, at *1, *8 (N.D. Okla. Apr. 3, 2015), aff'd, 659 F. App'x 461 (10th Cir. 2016) (citing United States v. Wolf, 561 F.2d 1376, 1381 (10th Cir. 1977)). The Oklahoma state statute defines "neglect," in pertinent part, as "the failure or omission to provide . . . supervision[.]" OKLA. STAT. tit. 21, § 843.5. The crime of neglect has no element involving dishonesty, deceit, or any other act that has a bearing on truthfulness; thus, defendant's prior conviction for child neglect has no bearing on his veracity. As such, the Court fails to see what impeachment value, if any, there is if the prior conviction is ruled admissible. However, "it is not necessary for the government to show that the defendant's prior convictions involve dishonesty or false statements in order to impeach the defendant with the convictions if he testifies at trial." Verner, No. 15-CR-0039-CVE, 2015 WL 1528917, at *8. Thus, if defendant opens the door to his prior conviction during his testimony, plaintiff would have grounds to admit the prior conviction for impeachment purposes at that time.

When evaluating the second factor, the Court considers the temporal proximity of defendant's prior convictions. "Convictions more than ten years old are presumptively excluded . . ." United States v. Caldwell, 760 F.3d 267, 287 (3d Cir. 2014). When a conviction occurred within the ten year time frame "the passage of a shorter period can still reduce [a prior conviction's] probative value." Id. (quoting Wright & Gold, Federal Practice and Procedure § 6134, at 258). "[A] prior conviction may have less probative value where the defendant-witness has maintained a spotless record since the earlier conviction or where the prior conviction was a mere youthful indiscretion. Conversely, the probative value of an older conviction may remain undiminished if the defendant

9

was recently released from confinement or has multiple intervening convictions, both of which could suggest his character has not improved." Id.

Defendant was convicted of child neglect in state court on January 24, 2014, when he was 22 years old. He was indicted in this case on or about March 24, 2021. However, it appears that, although defendant was convicted of child neglect approximately seven years ago, he has had another conviction in state court during that time.[2] In sum, defendant's youthful age at the time of the 2014 conviction weighs against admissibility, but the fact that the conviction is less than ten years old, and defendant had another conviction during that time period, weighs in favor of the 2014 conviction's admissibility.

The third factor, which compares the similarity of the current charged crime to the prior conviction, weighs against admitting the prior conviction for impeachment if the crimes are similar. Caldwell, 760 F.3d at 288. The greater the similarity of the charged crime to the past crime, the higher the likelihood that a jury will be tempted to infer criminal propensity, rather than use the information for its intended purpose–impeachment of credibility. See id; see also United States v. Chaco, 801 F. Supp. 2d 1217, 1228 (D.N.M. 2011) ("The case law suggests that past felonies are most prejudicial in cases where the felonies are most similar to the crimes charged."); United States v. Willis, No. 14-CR-64-JED, 2014 WL 2589475, at *2 (N.D. Okla. June 10, 2014) (same).

Here, child neglect and sexual abuse of a minor are crimes of a very different nature, and contain different elements. However, they are similar in that they are both crimes involving children, which runs a high risk of inflaming the passions of the jury. Thus, there is a significant risk that the

---

[2] On September 18, 2018, defendant was convicted of assault and battery in Tulsa County District Court case No. CF-2018-2932. Retrieved from Oklahoma States Court Network at oscn.net.

10

jury will be tempted to use the prior conviction for an improper purpose—inferring criminal propensity— rather than use it for impeachment of credibility. Caldwell, 760 F.3d at 288. As such, this factor weighs against admissibility.

In considering the fourth factor, the importance of defendant's testimony, the Court must determine whether the apprehension of potential impeachment by prior convictions will cause defendant to abstain from testifying; thus damaging his right to a full defense. See United States v. Cueto, 506 F. Supp. 9, 14 (W.D. Okla. 1979); see also Anna Roberts, Reclaiming the Importance of the Defendant's Testimony: Prior Conviction Impeachment and the Fight Against Implicit Stereotyping, 83 U. Chi. L. Rev. 835, 837 (2016). If the prior conviction is incredibly damaging or prejudicial, that counsels against admitting the prior conviction.

Defendant argues that he "will be deterred from taking the stand by the fear that the jury will learn of his past convictions . . . and the defendant is the only person who can refute the allegations against him." Dkt. # 29, at 4. The Court is persuaded by defendant's argument. In cases such as these, where there is little to no direct evidence, the defendant abstaining from testifying purely because of the apprehension of potential impeachment by prior convictions, would deprive him of his right to a full defense. See Cueto, 506 F. Supp. at 14. Thus, this factor weighs against admissibility.

When evaluating the final factor, the centrality of defendant's credibility at trial, the Court must consider whether defendant's credibility is a material consideration for the jury. Impeachment by prior conviction is not as important if the defendant's anticipated testimony will not be central to a jury determination–e.g., if defendant's testimony is corroborated by other sources. By contrast, "where a case is reduced to a swearing contest between witnesses, the probative value of a conviction

11

is increased." Caldwell, 760 F.3d at 288 (quoting Wright & Gold, Federal Practice and Procedure § 6134, at 256).

Here, defendant notes the high likelihood that he will take the stand, and concedes that he is "the only person who can refute the allegations against him." Dkt. # 29, at 4. Therefore, defendant's anticipated testimony and credibility will be central to a jury determination. As such, the probative value of the prior conviction is increased, which weighs in favor of admissibility.

On balance, the Court finds that the probative value of admitting the prior conviction does not outweigh its danger of prejudice, and the defendant's motion in limine to exclude the prior conviction (Dkt. # 29) is granted. However, the Court stresses that, should the defendant open the door to the prior conviction during testimony, plaintiff would have grounds to admit the prior conviction for impeachment purposes at that time.

**IT IS THEREFORE ORDERED** defendant Edward Joseph Parson's motion in limine to exclude certain testimony, or, in the alternative, motion for a Daubert hearing (Dkt. #30) is **moot in part** as to precluding Dr. Baxter from testifying as an expert, as to Ms. Jabr from testifying, and as to plaintiff not providing Rule 16 notice; **granted in part** as to precluding Dr. Conway from testifying that the "majority of confirmed sexual abuse cases have normal anogenital exams"; and **denied in part** as to a Daubert hearing and barring Ms. Stombaugh from giving her impressions, observations, and opinions of her interview with S.S.

**IT IS FURTHER ORDERED** that defendant Edward Joseph Parson's motion in limine to exclude a prior conviction under Fed. R. Evid. 609(a)(1)(B) (Dkt. # 29) is **granted**.

**DATED** this 4th day of October, 2021.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE