## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-CR-0112-CVE** |
| | ) | |
| **EDWARD JOSEPH PARSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Before the Court are plaintiff's amended response on the issue of Dr. Lauren Conway's proposed expert testimony (Dkt. # 83) and defendant's reply to plaintiff's amended response (Dkt. # 85).[1]  Plaintiff's amended response asks the Court to reconsider part of its earlier ruling on defendant's motion in limine (Dkt. # 69) insofar as it preliminarily precludes Dr. Conway's statement that the "majority of confirmed sexual abuse cases have normal anogenital exams."  Dkt. # 83, at 1.  The Court has reviewed plaintiff's amended response (Dkt. # 83) and will construe it as a request to reconsider the Court's prior ruling (Dkt. # 69) granting in part defendant's motion in limine (Dkt. # 30) to preclude Dr. Conway's testimony that the majority of confirmed sexual abuse cases have normal anogenital exams.

On March 24, 2021, a grand jury charged defendant with aggravated sexual abuse of a minor in Indian country.  Dkt. # 4, at 1.  Defendant moved in limine to exclude certain prospective testimony of plaintiff's expert witness, Dr. Lauren Conway.  Dkt. # 30, at 7.  Specifically, defendant

---

[1]  The Court notes that defense counsel filed a duplicate reply (Dkt. # 86).  Since the contents of Dkt. # 85 and Dkt. # 86 are identical, the Court will refer to Dkt. # 85 only for the purpose of this order.

argued that Dr. Conway's statement that the "majority of confirmed sexual abuse cases have normal anogenital exams" is an improper expert opinion because it is either impermissible vouching, or a purported scientific fact for which plaintiff has not provided an adequate basis.  Id.  Plaintiff responded that "[b]ased on her training and experience, Doctor Conway is expected to testify that the majority of 'confirmed' sexual abuse cases have normal genital exams . . . [and ] that 'confirmed' sexual abuse cases are determined by a legal finding of guilt, either by plea agreement or a guilty verdict after a jury trial." Dkt. # 34, at 6.  In its October 4, 2021 Opinion and Order (Dkt. # 69), the Court found, based on the information and argument presented by the parties at that time, that Dr. Conway's statement is not impermissible vouching, but that "[her] statement about the 'majority of confirmed sexual abuse cases' is so broad and non-specific, that it is essentially unverifiable and risks confusing or unduly influencing the jury." Dkt. # 69, at 5.  Consequently, the Court ruled that Dr. Conway's statement as to the majority of confirmed sexual abuse cases having normal anogenital exams was inadmissible.  Id.

At defendant's November 2, 2021 pretrial conference, plaintiff requested leave from the Court to file an amended response as to Dr. Conway's preliminarily precluded statement.  Dkt. # 80. Plaintiff informed the Court that it erred in its response to defendant's motion in limine (Dkt. # 34) regarding Dr. Conway's proposed testimony.  Id.  Specifically, plaintiff advised the Court that it erroneously stated that "confirmed" sexual abuses cases "are determined by a legal finding[,]" and requested permission from the Court to file an amended response to defendant's motion in limine (Dkt. # 30), which the Court granted.  Id.  In its amended response (Dkt. # 83), plaintiff argues that Dr. Conway's expert conclusion as to the majority of confirmed sexual abuse cases having normal anogenital exams is "supported by established medical research and literature[,]" and is helpful to

2

the jury in understanding the evidence in this case.  Dkt. # 83, at 5.  Plaintiff attaches to its motion Dr. Conway's curriculum vitae and several academic sources, including 1) a clinical report published as a guide for practitioners by the American Academy of Pediatrics (AAP) (Dkt. # 83-3); 2) a study published in the AAP academic journal, Pediatrics (Dkt. # 83-5); and 3) a review article published in the Journal of Pediatric and Adolescent Gynecology (Dkt. # 83-6).  Defendant responds that 1) "the three articles cited by the Government do not ultimately support the Government's conclusion that Dr.[Conway]'s testimony would be reliable"; 2) "any claim that the 'majority' of confirmed sexual abuse cases have normal anogenital examinations is of no value to the factfinder"; and 3) "the evidence is needlessly cumulative and risks unduly influencing the jury and causing unnecessary confusion under Rule 403."  Dkt. # 85, at 2-3.

Fed. R. Evid. 702, which governs the admissibility of expert witness testimony, provides, in pertinent part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts and data . . . .

Further, the Supreme Court has found that, pursuant to Rule 702, the Court performs a "gatekeeping role . . . of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.  Pertinent evidence based on scientifically valid principles will satisfy those demands."  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993).  The objective of this "gatekeeping requirement . . . is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of

intellectual rigor that characterizes the practices of an expert in the relevant field." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999).

Defendant argues that the articles provided by plaintiff do not support or ensure the reliability of Dr. Conway's conclusion that "the majority of confirmed child sexual abuse cases have normal anogenital exams." Dkt. # 85, at 3.  The Court is not persuaded by defendant's argument.  On the contrary, the AAP clinical report states "[m]ost sexually abused children have normal anogenital examinations."  Dkt. # 83-3, at 6.  In support of this proposition, the report cites to two studies published in academic journals.  Dkt. # 83-3, at 6, 10.  Next, the study published in Pediatrics states that "[e]xamination findings in children and adolescents presenting with sexual abuse histories are normal up to 96% of the time[;]" citing another study published in an academic journal.  Dkt. # 83-5, at 2-3.  Finally, the Journal of Pediatric and Adolescent Gynecology review article states "[m]ost sexually abused children will not have signs of genital or anal injury . . . a recent study reported that only 2.2% (26 of 1160) of sexually abused girls examined nonacutely had diagnostic physical findings[.]" Dkt. # 83-6, at 1.  The peer-reviewed, academic sources provided by plaintiff, including an AAP clinical guide for practitioners, demonstrate that other experts in Dr. Conway's specialization have reached the exact same conclusion.  Thus, the Court finds that Dr. Conway's statement as to the majority of confirmed sexual abuse cases having normal anogenital exams is based on sufficient facts and data.

Next, defendant argues that Dr. Conway's statement is not helpful to the jury.  Dkt. # 85, at 2. Defendant "concedes that Dr. Conway may testify that a normal anogenital exam neither confirms nor refutes an allegation of child sexual abuse[;]" however, according to defendant, "there is no benefit to permitting [Dr. Conway's] claim that the 'majority' of confirmed child sexual abuse cases

4

involve normal anogenital exam findings[,]" which risks confusing the jury. Id. at 4. The Court does not agree. The Court's gatekeeping function requires a determination of whether permitting the testimony is helpful to the jury. See Fed. R. Evid. 702(a). The proposition that the majority of confirmed sexual abuse cases have normal exams provides a frame of reference to the jury, adding context to the proposition that a normal exam neither confirms nor refutes allegations of sexual abuse. The Court finds that this expert opinion is helpful to the jury in deciding how to weigh the probative value of the alleged victim's normal anogenital exam in this case.

Finally, defendant argues that Dr. Conway's statement that the majority of confirmed sexual abuse cases have normal exams is "needlessly cumulative and risks unduly influencing the jury and causing unnecessary confusion under Rule 403" Id. at 3. Under Rule 403, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury . . . or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Evidence is cumulative if its probative effect is already achieved by other evidence in the record[.]" Jewell v. Life Ins. Co. of North Am., 508 F.3d 1303, 1314 (10th Cir. 2007). The proposition that a normal exam neither confirms nor refutes an allegation of sexual abuse, and the proposition that the majority of confirmed sexual abuse cases have normal exams, are two discrete propositions with distinct probative values. One statement goes to whether the fact that the alleged victim had a normal anogenital exam is dispositive of whether or not the child was sexually abused. The other statement goes to whether normal exams are prevalent among confirmed sexual abuse cases. Further, the Court is not persuaded by defendant's argument that Dr. Conway's testimony about the majority of confirmed cases having normal exams "risks introducing contradiction and confusion; the jury may mistakenly conclude that a 'normal' exam is in fact

evidence of child sexual abuse because the 'majority' of child abuse cases have them."  Dkt. # 85, at 4.  As the Court noted, supra, Dr. Conway's statement adds context and a frame of reference for her other statement that a normal exam neither confirms nor refutes an allegation of sexual abuse. If defendant's position is that the two statements—that a normal exam neither confirms nor refutes sexual abuse allegations and that the majority of confirmed sexual abuse cases have normal exams—are contradictory, defense counsel is free to cross-examine Dr. Conway at trial as to this purported contradiction.  The Court finds the propositions are not cumulative as they have distinct probative effects, and the risk of undue influence and confusion does not substantially outweigh the probative value of Dr. Conway's statement.

In sum, the Court has reconsidered its earlier ruling on defendant's motion in limine (Dkt. # 30) and hereby finds that Dr. Conway's expert opinion, that the majority of confirmed sexual abuse cases have normal anogenital exams, is based on sufficient facts and data and is helpful to the jury in understanding the evidence and determining the facts at issue in this case; thus, pursuant to Rule 702, Dr. Conway's statement should be admitted.

**IT IS THEREFORE ORDERED** that the Court's prior opinion and order (Dkt. # 69) granting in part defendant's motion in limine (Dkt. # 30) to preclude one aspect of Dr. Conway's testimony is hereby reconsidered based on plaintiff's amended response (Dkt. # 83); and defendant's motion in limine (Dkt. # 30) as to Dr. Conway's statement that the majority of confirmed sexual abuse cases have normal anogenital exams is hereby **denied**.

**DATED** this 12th day of November, 2021.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE